UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE COALITION FOR<br>FAIR TRADE OF HARDWOOD PLYWOOD )<br><br>Plaintiff, )<br>v. )<br><br>UNITED STATES, )<br><br>Defendant. ) | Court No. 14-00013 |

**COMPLAINT**

Plaintiff, The Coalition for Fair Trade of Hardwood Plywood, by and through its attorney, alleges and states the following claims against defendant, United States of America.

1.       Plaintiff seeks judicial review of the final negative determinations of the U.S. International Trade Commission in the antidumping and countervailing duty investigations of *Hardwood Plywood From China*, Investigation Numbers 701-TA-490 and 731-TA-1204 (Final). *Hardwood Plywood From China; Determinations*, 78 Fed. Reg. 76857 (December 19, 2013). The views of the Commission and accompanying staff report are set forth in *Hardwood Plywood From China: Investigation Nos. 701-TA-490 and 731-TA-1204*, USITC Publication 4434 (November 2013).

**JURISDICTION**

2.       This action is brought pursuant to 19 U.S.C. §1516A(a)(2)(B)(ii), to contest the final negative determinations of the U.S. International Trade Commission in the antidumping and countervailing duty investigations of *Hardwood Plywood From China*, Investigation Numbers 701-TA-490 and 731-TA-1204 (Final). *Hardwood Plywood From China; Determinations*, 78

Fed. Reg. 76857 (December 19, 2013).  The views of the Commission and accompanying staff report are set forth in *Hardwood Plywood From China*: Investigation Nos. 701-TA-490 and 731-TA-1204 (Final), USITC Publication 4434 (November 2013).

3.      The United States Court of International Trade has exclusive jurisdiction over this action under 28 U.S.C. §1518(c) since this action is commenced pursuant to section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. §1516a.

## STANDING

4.      The Coalition for Fair Trade of Hardwood Plywood (hereafter "the CFTHP") is an association of U.S. producers of hardwood and decorative plywood, and was the petitioner in the administrative proceeding.  The member-companies of the CFTHP are as follows: Columbia Forest Products; Commonwealth Plywood Co., Ltd.; Rosenburg Forest Products Co.; States Industries LLC; and Timber Products Company.

5.      Pursuant to 19 U.S.C. §1516a(a)(2)(B), the CFTHP is an interested party as defined in 19 U.S.C. §1677(9)(C) and (F), since the member-companies of the CAHP are producers in the United States of a domestic like product, and the association is composed of interested parties described in 19 U.S.C. §1677(9)(C).

6.      The CFTHP has standing to commence this action under 28 U.S.C. §2631(c).

## TIMELINESS

7.      Plaintiff, the CFTHP, commenced this action by filing a Summons on January 17, 2014, which was within thirty days after the publication of the final negative determinations of the U.S. International Trade Commission in the antidumping and countervailing duty investigations of *Hardwood Plywood From China,* Investigation Numbers 701-TA-490 and 731-TA-1204 (Final).  *Hardwood Plywood From China; Determinations*, 78 Fed. Reg. 76857

(December 19, 2013).  Plaintiff is filing this Complaint within thirty days of the date of the filing of the Summons, in accordance with Rule 3(a)(2) of the Rules of the U.S. Court of International Trade.  Thirty days after January 17, 2014, was February 16, 2014.  February 16, 2014, was a Sunday, and was followed by February 17, 2014, which was a legal holiday (Presidents' Day).  Pursuant to Rule 6(a)(1)(C) of the Rules of the U.S. Court of International Trade, this Complaint is filed on the next business day, February 18, 2014.

**THE ADMINISTRATIVE PROCEEDING**

8.      On September 27, 2012, the CFTHP filed a petition with the U.S. Department of Commerce and the U.S. International Trade Commission concerning imports of hardwood plywood from China.

9.      On October 3, 2012, published a notice regarding the institution of preliminary phase investigations concerning imports of hardwood plywood from China.  *Hardwood Plywood From China; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 77 Fed. Reg. 60460 (October 3, 2012).

10.      On October 24, 2012, the U.S. Department of Commerce published a notice of the initiation of the countervailing duty investigation concerning imports of hardwood and decorative plywood from China.  *Hardwood and Decorative Plywood from the People's Republic of China: Initiation of Countervailing Duty Investigation*, 77 Fed. Reg. 64955 (October 24, 2012).  On October 25, 2012, the U.S. Department of Commerce published a notice of the initiation of the antidumping investigation concerning imports of hardwood and decorative plywood from China.  *Hardwood and Decorative Plywood from the People's Republic of China: Initiation of Antidumping Duty Investigation*, 77 Fed. Reg. 65172 (October 25, 2012).

11.     On November 13, 2012, the Commission issued a unanimous affirmative preliminary determination, finding that there is a reasonable indication that an industry in the United States is materially injured by reason of imports of hardwood plywood from China that were allegedly subsidized and sold in the United States at less than fair value.  Notice of the Commission's affirmative preliminary determination was published at 77 Fed. Reg. 71017 (November 28, 2012).   The views of the Commission and accompanying staff report were published in the Commission's report, Hardwood Plywood From China: Investigation Nos. 701-TA-490 and 731-TA-1204 (Preliminary), USITC Publication 4361 (November 2012).

12.     On March 14, 2013, the U.S. Department of Commerce published its affirmative preliminary determination in the countervailing duty investigation of *Hardwood and Decorative Plywood from the People's Republic of* China.  *Hardwood and Decorative Plywood from the People's Republic of China: Amended Preliminary Countervailing Duty Determination; and Alignment of Final Determination With Final Antidumping Determination*, 78 Fed. Reg. 16250 (March 14, 2013).  On May 3, 2013, the U.S. Department of Commerce published its affirmative preliminary determination of sales at less than fair value in the antidumping duty investigation of *Hardwood and Decorative Plywood from the People's Republic of China*.  *Hardwood and Decorative Plywood from the People's Republic of China: Antidumping Duty Investigation*, 78 Fed. Reg. 25946 (May 3, 2013).

13.     On June 19, 2013, the Commission published its institution notice regarding the final phase investigations of *Hardwood Plywood from China*.  *Hardwood Plywood From China; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Final Phase Investigations*.  78 Fed. Reg. 36791 (June 19, 2013).

14.     On September 23, 2013, the U.S. Department of Commerce published its final affirmative determination of sales at less than fair value.  The final dumping margins calculated by the U.S. Department of Commerce ranged from 55.76 percent to 121.65 percent.  *Hardwood and Decorative Plywood from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 78 Fed. Reg. 58273 (September 23, 2013).  On September 23, 2013, the U.S. Department of Commerce published its final affirmative countervailing duty determination. The three mandatory respondents received *de minimis* subsidy rates in the final determination. The remaining producers/exporters of the subject merchandise received final subsidy rates that ranged from 13.58 to 27.16 percent.  *Hardwood Plywood from the People's Republic of China: Final Affirmative Countervailing Duty Determination; 2011*, 78 Fed. Reg. 58283 (September 23, 2013).

15.     On September 11, 2013, parties to the final phase investigations of the U.S. International Trade Commission, including the CFTHP, submitted pre-hearing briefs to the Commission.

16.     On September 19, 2013, the U.S. International Trade Commission conducted a public hearing in connection with its final phase investigations.  The CFTHP was represented by legal counsel, economists, and industry representatives, who testified before the Commission in support of a final affirmative determination.  Other interested parties, including certain U.S. distributors and end-users and representatives of certain producers/exporters of the subject merchandise in China, also appeared and provided testimony at the hearing.

17.     On September 25, 2013, parties to the final phase investigations of the U.S. International Trade Commission, including the CFTHP, submitted post-hearing briefs to the Commission.

18.     On October 25, 2013, the U.S. International Trade Commission released its final staff report in the final phase investigations.

19.     On November 1, 2013, parties to the final phase investigations of the U.S. International Trade Commission, including the CFTHP, submitted final comments to the Commission.

20.     On November 5, 2013, the Commission conducted a public vote in its final phase investigations.  The Commission determined by a vote of 5-0 that an industry in the United States is not materially injured or threatened with material injury, and the establishment of an industry in the United States is not materially retarded, by reason of imports of hardwood plywood from China that the U.S. Department of Commerce has determined are subsidized and sold in the United States at less than fair value.  The Commission's final determinations were published on December 19, 2013.  *Hardwood Plywood From China; Determinations*, 78 Fed. Reg. 76857 (December 19, 2013).  The views of the Commission and accompanying staff report are set forth in *Hardwood Plywood From China: Investigation Nos. 701-TA-490 and 731-TA-1204*, USITC Publication 4434 (November 2013).

## STANDARD OF REVIEW

21.     In reviewing final determinations of the U.S. International Trade Commission (hereafter "Commission" or "ITC") in antidumping and countervailing duty investigations, the U.S. Court of International Trade "shall hold unlawful any determination, finding, or conclusion found … to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. §1516a(b)(1)(B).

**STATEMENT OF CLAIMS**

22.     In the following respects, and for other reasons apparent from the record of the administrative proceeding, the final negative determination of the U.S. International Trade Commission in the final phase investigations of *Hardwood Plywood From China* are unsupported by substantial evidence on the record, or otherwise not in accordance with law.

**Count 1**

23.     The allegations in paragraphs 1 through 22 are incorporated by reference and restated as if fully set forth herein.

24.     The ITC's final negative determination that an industry in the United States was not materially injured or threatened with material injury by reason of imports of hardwood plywood from China that the U.S. Department of Commerce has determined are subsidized and sold in the United States at less than fair value is not supported by substantial evidence on the record, and is otherwise not in accordance with law.

**Count 2**

25.     The allegations in paragraphs 1 through 24 are incorporated by reference and restated as if fully set forth herein.

26.     The ITC's finding that substitutability between the domestic like product and subject imports is limited, and the subsidiary findings on which this conclusion rests, are not supported by substantial evidence on the record and otherwise not in accordance with law. Among other errors, the ITC's analysis failed to account for a wide range of probative evidence provided by the CFTHP which established that competition between subject imports and the domestic like product is direct and widespread throughout the range of hardwood plywood products.  The ITC's determination ignored or left unaddressed, *inter alia*, affidavits by domestic

manufacturers and U.S. distributors on this issue, listings of products for which domestic manufacturers of the domestic like product confront direct competition from subject imports, and the sworn testimony of CFTHP representatives at the ITC's hearing held in connection with its final phase investigations.  The ITC's determination marginalized the fact that U.S. importers reported quarterly pricing data on hardwood plywood products which they believe to be directly competitive with the domestic like product, and minimized the relevance of confirmed allegations of lost sales by domestic producers, which evidence direct competition between subject imports and the domestic like product.

Furthermore, the ITC's determination erroneously concluded, that subject imports are often preferred or required for certain end-use applications due to product characteristics or capabilities, rather than price.  Among other errors, the ITC erroneously concluded that domestically-manufactured hardwood plywood was concentrated in higher-grade products while subject imports are concentrated in lower-grade products.

## Count 3

27.     The allegations in paragraphs 1 through 26 are incorporated by reference and restated as if fully set forth herein.

28.     The ITC's finding that subject imports did not have significant adverse price effects on prices for the domestic like product, and the subsidiary findings on which this conclusion rests, are not supported by substantial evidence on the record and otherwise not in accordance with law.  Among other errors, the ITC erroneously concluded that "significant" underselling by subject imports - subject imports undersold domestic like product in 83 of 84 quarterly comparisons, with underselling margins ranging from 0.9 to 56.5 percent - did not have an adverse price effect on the domestic like product.  The ITC's conclusion was based in part on

an erroneous finding that subject imports did not have a suppressive effect on the price of the domestic like product. The ITC's conclusion was also based in part on its erroneous finding that differences in product characteristics between subject imports and the domestic like product resulted in near-universal underselling by subject imports without an attendant adverse price effect on the domestic like product. Furthermore, while the ITC acknowledged confirmed lost sales allegations presented by the domestic industry, it discounted and marginalized the adverse effects that this has on the domestic like product.

In addition, the ITC failed to consider the body of evidence presented by the CFTHP which strongly indicates that producers/exporters of the subject merchandise in China gain a substantial pricing advantage through their procurement of wood materials from illegal or suspect sources. This analytical omission was of particular significance, since access to illegal or suspect raw wood materials explains to a substantial degree the margins of underselling by subject imports found by the Commission.

## **Count 4**

29.     The allegations in paragraphs 1 through 28 are incorporated by reference and restated as if fully set forth herein.

30.     The ITC's finding that subject imports did not have a significant adverse impact on the trade and financial posture of domestic industry, and the subsidiary findings on which this conclusion rests, are not supported by substantial evidence on the record and otherwise not in accordance with law. Among other errors, the ITC failed to adequately evaluate whether the domestic industry was unable to more fully benefit from a recovery in relevant U.S. end-use markets during the period of investigation because of the significant and increasing volume of unfairly traded subject imports during the period of investigation.

The ITC also discounted and marginalized the causal relationship between subject imports and the condition of the domestic industry demonstrated by the improvements registered by the domestic industry subsequent to the filing of the underlying petition, and the imposition of cash deposit requirements resulting from the affirmative preliminary determinations of the U.S. Department of Commerce in the antidumping and countervailing duty investigations.

## Count 5

31.    The allegations in paragraphs 1 through 30 are incorporated by reference and restated as if fully set forth herein.

32.    The ITC's negative final determination was not supported by substantial evidence on the record and otherwise not in accordance with law because, among other reasons, the Commission did not consider the final dumping margins calculated for all subject imports.  In examining the impact of subject imports on the domestic industry, the ITC is directed by the operative statute, 19 U.S.C. §1677(35)(C), to consider, among other factors, the magnitude of the margins of dumping found by the U.S. Department of Commerce.  The final dumping margins calculated by the U.S. Department of Commerce ranged from 55.76 percent to 121.65 percent, and encompassed all producers/exporters of the subject merchandise in China.  However, the ITC's "consideration" of this statutory factor amounted to no more than a simple recitation of the final dumping margins, relegated to only a footnote in the Views of the Commission.  The ITC failed to evaluate the deleterious impact on the domestic industry of this substantial degree of unfair trading by subject imports.

This analytical omission was particularly significant since, *inter alia*, subject imports account for the largest supply source for the subject merchandise in the U.S. market during the period of investigation, and is coincident with the substantial margins of underselling found by

the Commission.  The error resulting from this analytical omission was compounded by the ITC's erroneous conclusions that there was "limited" competition between subject imports and the domestic like product, and that the subject imports did not have significant adverse price effects on prices for the domestic like product.

## Count 6

33.     The allegations in paragraphs 1 through 32 are incorporated by reference and restated as if fully set forth herein.

34.     The ITC's finding that an industry in the United States was not threatened with material injury by reason of imports of hardwood plywood from China that the U.S. Department of Commerce has determined are subsidized and sold in the United States at significantly less than fair value, and the subsidiary findings on which this conclusion rests, is not supported by substantial evidence on the record, and is otherwise not in accordance with law.  Among other errors, and for the reasons specified in Counts 2, 3 and 4, *supra*, the ITC made erroneous findings regarding competition between subject imports and domestically-manufactured hardwood plywood in the U.S. market, the impact of prices of subject imports on the prices which domestic producers of hardwood plywood were able to receive for its products, and the impact of subject imports on the domestic industry.  Furthermore, the ITC discounted or marginalized the ability of producers in China to increase exports of subject merchandise to the U.S. market, and the effect of antidumping and/or countervailing duty orders in third-countries.

## PRAYER FOR RELIEF AND JUDGEMENT

WHEREFORE, the CFTHP, respectfully requests that the court enter judgment as follows:

A)      Enter judgment in favor of Plaintiff;

B)      Hold as unlawful the ITC's final negative determinations that are the subject of this Complaint;

C)      Remand this proceeding to the ITC with instructions to publish a revised final determination in conformity with the Court decision; and

D)      Provide such other and further relief as the Court may deem just and appropriate.


Respectfully submitted,

/s/  Jeffrey S. Levin
Jeffrey S. Levin

Levin Trade Law, P.C.
7800 Beech Tree Road
Bethesda, MD  20817
Tel:     301-787-3531
Fax:     301-263-0005
Email: JeffLevin@levintradelaw.com

Counsel for
The Coalition for Fair Trade of
Hardwood Plywood
Plaintiff

Dated:  February 18, 2014